**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **DENVER E. WOODS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CAUSE NO. 1:16-cv-00108-SLC** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** *sued as Nancy A. Berryhill,* ) | |
| *Acting Commissioner of SSA,*[1] ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Plaintiff Denver E. Woods, Jr., appeals to the district court from a final decision of the

Commissioner of Social Security ("the Commissioner") denying his application under the Social

Security Act (the "Act") for disability insurance benefits ("DIB").[2] (DE 1). For the following

reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Woods applied for DIB in October 2012, alleging disability as of June 1, 2012. (DE 12

Administrative Record ("AR") 121-22). The Commissioner denied Woods's application initially

and upon reconsideration. (AR 64-71). A hearing was held on April 24, 2014, before

Administrative Law Judge Maryann S. Bright ("the ALJ"), at which Woods, who was

represented by counsel, and a vocational expert, Marie Kieffer (the "VE"), testified. (AR 29-

_____

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 15); *see* 28 U.S.C. § 636(c).

60).    On October 20, 2014, the ALJ rendered an unfavorable decision to Woods, concluding that he was not disabled because he could perform a significant number of unskilled, sedentary jobs in the economy despite the limitations caused by his impairments.  (AR 15-23).  The Appeals Council denied Woods's request for review (AR 1-11), at which point the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

Woods filed a complaint with this Court on March 30, 2016, seeking relief from the Commissioner's decision.  (DE 1).  Woods alleges two material flaws in the Commissioner's decision:  (1) that the ALJ failed to adequately account for Woods's mental limitations in the residual functional capacity ("RFC") and in the hypothetical questions posed to the VE at step five; and (2) that the ALJ improperly discounted Woods's symptom testimony.  (DE 20 at 4-9).

## II.  FACTUAL BACKGROUND[3]

At the time of the ALJ's decision, Woods was 53 years old (AR 23, 62); had a high school education (AR 180); and possessed past relevant work experience as a machine operator in a manufacturing setting (DE 181).  Woods alleges disability due to a history of colorectal cancer surgery, radiation, and chemotherapy; a mood disorder due to medical conditions; and peripheral neuropathy.  (DE 20 at 2).

### A.  *Woods's Testimony at the Hearing*

At the hearing, Woods testified as follows:  Woods, who was six feet, one inch tall and weighed 235 pounds, testified that he is married with an adult child; Woods's wife is employed outside the home.  (AR 32-33).  Although Woods had obtained health insurance on or about

_____

[3] In the interest of brevity, this Opinion recounts only the portions of the 336-page administrative record necessary to the decision.

February 2014, but he did not have health insurance in 2013.  (AR 33).  He is independent with his self care, but he does not do many household tasks.  (AR 53).  He drives a car once a week to run errands; his wife had driven him to the hearing.  (AR 34).  He stopped working because his employer closed the plant where he worked; he did not feel that he could start another job at the time due to his pain and other symptoms.  (AR 35-36).

Woods asserted that he could no longer work due to pain in his stomach from his history of colon cancer and his frequent bathroom needs; difficulty standing or sitting for extended periods; and medication side effects of fatigue, dizziness, and difficulty concentrating.  (AR 39-40, 47, 49).  He stated that he has had abdominal pain for 12 years and that he takes pain medication for the pain.  (AR 42, 44).  The pain, which is constant, feels like "fullness" in his stomach area.  (AR 49).  He conceded, however, that he had worked for 10 years after his cancer treatment, even when he was taking high doses of pain medication.  (AR 40).  He also complained that he could "hardly stand" due to knee pain, which started a year earlier and wakes him at night.  (AR 40).  Woods had told his doctor about his knee pain and she had recommended testing, but he declined to do so due to his financial limitations.  (AR 41, 54-55).  He estimated that he could walk one block before needing to rest.  (AR 23).

Woods testified that in a typical day, he has to use the bathroom "on and off all day long." (AR 44).  Up to three days a week, for six to eight-hour periods, he has to use the bathroom every 15 minutes.  (AR 45, 52).  He takes pain medication, Tramadol, because his bowel movements are painful, and the medication is helpful, though it makes him drowsy.  (AR 44, 51-52).  He has to lay around a lot because of the pain, and often he lies in a hot bath to ease the pain.  (AR 44).  He does not do many household tasks because it is hard for him to get away

3

from the bathroom. (AR 46). He stated that he has little warning before needing to use the bathroom, and sometimes he remains there for hours at a time. (AR 49-50, 52). He also takes two naps each day, each lasting one to two hours. (AR 21). He has difficulty sleeping at night, so he sometimes lies in a recliner, which helps ease his pain. (AR 51). He also complained of feeling depressed and irritable all the time, but he had not discussed these symptoms with his doctor or received any treatment for depression. (AR 23-24, 54).

### B. Summary of the Relevant Medical Evidence

In 2002, Woods was diagnosed with advanced stage III colorectal cancer. (AR 271). He underwent chemotherapy, radiation, and resection. (AR 271). He returned to full-time work that same year. (AR 35-36, 39). In 2004, Woods had scar tissue surgically removed from his colon. (AR 275). In 2009, a CT scan was negative for any recurrence of cancer, and a later colonoscopy and sigmoidoscopy were negative. (AR 271).

On January 9, 2013, Woods underwent a mental status examination by Ceola Berry, Ph.D., for purposes of his disability application. (AR 279-81). Woods presented with a dysthymic mood; his attention and concentration were adequate. (AR 279). He denied any suicidal or homicidal ideation. (AR 279). He was independent with his daily living skills, but he reported frequent muscle spasms of his colon and frequent bowel movements. (AR 279-80). The mental status examination did not reveal any significant problems with concentration, memory, mental calculations, abstracting ability, general knowledge, or judgment. (AR 280). Woods's energy level waned during the examination, but "he presented as a persister in a stressful environment." (AR 280). Dr. Berry concluded that Woods's ability to work would be primarily affected by his perceived physical limitations and secondarily by his mood states. (AR

280).  Dr. Berry diagnosed Woods with a mood disorder due to medical conditions and assigned him a Global Assessment of Functioning ("GAF") score of 60.[4]

Several days later, on January 15, 2013, Woods was examined by Dr. James Chan for purposes of his disability application.  (AR 271-74).  Woods complained of decreased energy, difficulty sleeping, and loss of appetite.  (AR 271).  Woods was diagnosed with depression by his general practitioner, but he was not taking any medications for it.  (DE 274).  He related a 10-year history of fatigue upon waking, which worsened throughout the day.  (DE 271).  The examination revealed no abnormalities in musculoskeletal or neurological systems, strength, sensation, fine fingering, or physical movement.  (DE 273).  Dr. Chan noted Woods's history of treatment for colon cancer and opined that Woods likely had some constipation due to post-surgical fibrosis with muscle spasms and fatigue causing hypogastric pain.  (DE 274).  He recommended that Woods add dulcolax/miralax to help regulate his bowel movements, flexeril to help with spasms, and fiber supplements; he also advised Woods to continue follow-up checks for colon cancer.  (DE 274).  Dr. Chan further noted that Woods had a six-month history of vertigo; Dr. Chan advised Woods to consider ceasing Lyrica temporarily due to possible neurological side effects, and to switch to Neurontin instead.  (AR 274).

That same day, January 15, 2013, Dr. R. Fife, a state agency physician, reviewed

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000).  A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.*  "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).  However, Dr. Berry used a GAF score in assessing Woods, so the GAF is relevant to the ALJ's decision.  *See id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

Woods's record.  (AR 283-90).  Dr. Fife concluded that Woods could lift 10 pounds frequently and 20 pounds occasionally; stand or walk six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and must avoid wetness and hazards, such as slippery, uneven surfaces or heights.  (AR 283-90).  Dr. Fife's opinion was later affirmed by Dr. J.V. Corcoran, another state agency physician.  (AR 305).

The next day, January 16, 2013, Benetta E. Johnson, Ph.D., a state agency psychologist, reviewed Woods's record and completed a psychiatric review technique form.  (AR 291-304). Dr. Johnson concluded that Woods had mild difficulties in maintaining concentration, persistence, or pace, but no restrictions in activities of daily living or maintaining social functioning.  (AR 301).  In her narrative, Dr. Johnson observed that Woods had an adequate attention span and that he could finish what he started, follow instructions, and get along with authority.  (AR 303).  Dr. Johnson opined that Woods's mental impairment did not appear to be severe.  (AR 303).  Dr. Johnson's opinion was later affirmed by Joelle J. Larsen, Ph.D., another state agency psychologist.  (AR 306).

On September 8, 2014, Woods visited Dr. Eric Wallisa of MedExpress Marion for complaints of chronic abdominal pain.[5]  (AR 318-20).  Tenderness and guarding were "noted diffusely" in the abdominal exam.  (AR 319).  However, Woods's abdomen was normal to percussion and not distended, normally active bowel sounds were present, and an obturator sign was negative.  (AR 319).  There was no rigidity or rebound tenderness noted diffusely, and no

---

[5] As will be discussed *infra*, Woods submitted Dr. Wallisa's report to the Appeals Council for review after the ALJ issued her decision.  It is unclear whether Dr. Wallisa's report was before the ALJ at the time of her decision.

evidence of hernia, a mass, or enlargement of the liver or spleen. (AR 319). An abdominal X-ray revealed increased retained stool density throughout the colon, but no obstruction or impaction. (AR 320, 322). Dr. Wallisa assessed general abdominal pain, indicating that Woods's symptoms appeared to be "neuropathic pain related from chemotherapy and radiation treatments for colon cancer." (AR 320). Dr. Wallisa prescribed Neurontin and instructed Woods to increase his fluids. (AR 320, 324).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the

ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and

---

[6] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On October 20, 2014, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 15-23). At step one, the ALJ concluded that Woods had not engaged in substantial gainful activity after his alleged onset date of June 1, 2012. (AR 17). At step two, the ALJ found that Woods had the following severe impairments: a history of colorectal cancer surgery, radiation, and chemotherapy in 2002; and a mood disorder due to medical conditions. (AR 17).

At step three, the ALJ concluded that Woods did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 17-19). Before proceeding to step four, the ALJ determined that Woods's symptom testimony was "not entirely credible" (AR 20), and assigned him the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . . Specifically, he is capable of lifting, carrying, pushing, pulling 20 pounds occasionally and 10 pounds frequently; standing and/or walking approximately 6 hours per 8-hour work day, and sitting for approximately 6 hours per 8-hour work day, with normal breaks; occasionally climbing ramps and stairs, balancing, stooping, crouching, kneeling and crawling; never climbing ladders, ropes or scaffolds; and avoid concentrated exposure to wetness and hazards of slippery, uneven surfaces, unprotected heights and dangerous unguarded machinery. He is unable to engage in complex or detailed tasks, but can perform simple, routine and repetitive tasks consistent with unskilled work and is able to sustain and attend to task throughout the 8-hour workday.

(AR 19). The ALJ found at step four that Woods could not perform any of his past relevant

work. (AR 21). At step five, based on the assigned RFC and the VE's testimony, the ALJ concluded that Woods could perform a significant number of unskilled, light exertional jobs in the economy, including cashier, small products assembler, and rental clerk. (AR 22). Therefore, Woods's application for DIB was denied. (AR 23).

### C. The ALJ Adequately Accounted for Woods's Mental Limitations in the RFC and in the Step-Five Hypotheticals

Woods first argues that the ALJ failed to adequately account for his mental limitations in the RFC and in the hypotheticals posed to the VE at step five. More specifically, Woods argues that the ALJ erred by failing to incorporate into the RFC and into the hypotheticals her step-three finding that he had moderate deficits in maintaining concentration, persistence, or pace. Contrary to Woods's assertion, the assigned RFC and the step-five hypotheticals adequately account for his mental limitations, and thus, Woods's argument does not warrant a remand of the Commissioner's final decision.

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing his degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Relevant to this appeal, the "paragraph B" criteria consist of four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). "[T]he limitations identified in the 'paragraph B' criteria . . . are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of

the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ."  SSR 96-8p, 1996 WL 374814, at *4; *see Virden v. Astrue*, No. 11-0189-DRH-CJP, 2011 WL 5877233, at *9 (S.D. Ind. Nov. 4, 2011).  "RFC is what an individual can still do despite his or her limitations."  SSR 96-8p, 1996 WL 374184, at *2; *see* 20 C.F.R. § 404.1545(a)(1).  "The RFC assessment must be based on *all* of the relevant evidence in the case record . . . ."  SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 404.1545(a)(3).  That is, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012).

Here, when assessing the "paragraph B" criteria at steps two and three, the ALJ concluded that Woods had moderate difficulties in maintaining concentration, persistence, or pace, but no difficulties in activities of daily living or in maintaining social functioning.  (AR 18).  When proceeding to step four, the ALJ then assigned Woods the following mental RFC: "[Woods] is unable to engage in complex or detailed tasks, but can perform simple, routine and repetitive tasks consistent with unskilled work and is able to sustain and attend to tasks throughout the 8-hour workday."  (AR 19).

Woods asserts that the foregoing restriction is inadequate because it did not expressly include the ALJ's finding at step three that he had moderate difficulties in maintaining concentration, persistence, or pace.  Specifically, Woods argues that in most cases, incorporating

11

terms like "simple, repetitive tasks" or "unskilled work" on their own will not necessarily

exclude from the VE's consideration those jobs that present significant problems of

concentration, persistence, or pace.  (DE 20 at 5).

Indeed, the Seventh Circuit Court of Appeals has instructed that "for most cases, the ALJ

should refer expressly to limitations on concentration, persistence, and pace in the hypothetical

in order to focus the VE's attention on these limitations and assure reviewing courts that the

VE's testimony constitutes substantial evidence of the jobs a claimant can do."  *O'Connor-*

*Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010); *see, e.g.*, *Miller v. Colvin*, No. 1:11-cv-

1186, 2013 WL 796722, at *4 (S.D. Ind. Mar. 1, 2013) (concluding that the case fell within the

scope of "most cases" and that the restrictions on concentration, persistence, and pace should

have been included in the hypothetical).  However, in this particular instance, the assigned RFC

and the hypotheticals posed by the ALJ to the VE adequately accounted for Woods's mental

limitations and the ALJ's step-three finding that Woods had moderate deficits in concentration,

persistence, or pace.

To explain, in assigning Woods the RFC, the ALJ gave "[g]reat weight" to the

assessment of Dr. Berry.  (AR 21).  The mental status examination administered by Dr. Berry

"d[id] not reveal any significant problems with concentration, short-term memory, mental

calculations, abstracting ability, general knowledge or judgment," and she found that Woods's

"concentration and attention to task was adequate."  (AR 279-80).  Dr. Berry concluded that

Woods's "ability to work would be primarily affected by his perceived physical limitations and

secondarily by mood states."  (AR 280); *see Dixon*, 270 F.3d at 1177 (appreciating that in

contrast to a treating physician's opinion, "a consulting physician's opinion might have the

advantage of both impartiality and expertise" (citation omitted)).

Additionally, the ALJ gave "partial weight" to the opinion of Dr. Johnson, the state agency psychologist, who concluded that Woods had just mild limitations in maintaining concentration, persistence, or pace, and no limitations in activities of daily living and maintaining social functioning. (AR 21). Dr. Johnson opined that Woods could finish what he starts, follow instructions, and get along with authority. (AR 303). Dr. Johnson's opinion was later affirmed by Dr. Larsen. (AR 306). "The regulations, and this Circuit, clearly recognize that reviewing physicians and psychologist[s] are experts in their field and the ALJ is entitled to rely on their expertise." *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (citing 20 C.F.R. § 404.1527(e)(2)(i); *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)).

In *O'Connor-Spinner*, 627 F.3d at 620, the Seventh Circuit stated that when an ALJ translates a step-three finding of limitations into concentration, persistence, or pace to the RFC, the ALJ should address not only the complexity of the tasks the claimant can perform, but also the "[t]he ability to stick with a given task over a sustained period[.]" *See also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014). Here, the RFC and the step-five hypotheticals did just that. The ALJ, relying on the opinions of Drs. Berry, Johnson, and Larsen, crafted an RFC and step-five hypotheticals that were even more accommodating that the medical source opinions of these doctors, addressing both the complexity of the tasks that Woods could perform and his ability to complete such tasks over a sustained period.

To address complexity, the ALJ stated that Woods "is unable to engage in complex or detailed tasks, but can perform simple, routine, and repetitive tasks consistent with unskilled work." (AR 19). And to address the ability to stick with a given task over a sustained period,

the ALJ stated that Woods "is able to sustain and attend to task throughout the 8-hour workday." (AR 19). Thus, the ALJ did not run afoul of the Seventh Circuit's instruction in *O'Connor-Spinner* to address both the complexity of the tasks the claimant can perform and the claimant's ability to stick with the tasks over a sustained period. *See Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir. 2010) (concluding that the assigned RFC for unskilled work adequately accounted for the claimant's difficulties in concentration, persistence, or pace, where a medical source opined that the claimant could perform unskilled work despite her deficits in concentration, persistence, or pace); *Johnson v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (affirming the ALJ's RFC where he relied on a medical source opinion who found that despite the claimant's limitations in the ability to maintain a regular schedule and complete a normal workday, the claimant could still perform low-stress, repetitive work); *Marley v. Colvin*, No. 1:14- cv-157, 2015 WL 3999484, at *4-6 (N.D. Ind. July 1, 2015) (finding that the ALJ adequately accounted for the claimant's deficits in concentration, persistence, or pace where the ALJ relied on a medical source opinion indicating that the claimant could perform simple work and could "attend to task for sufficient periods of time to complete tasks").

Furthermore, in concluding at step three that Woods had moderate limitations in concentration, persistence, or pace, the ALJ linked Woods's concentration difficulties to his complaints of abdominal pain and his taking pain medication. Specifically, the ALJ stated:

> The claimant testified that he suffers from abdominal pain and that he takes pain medication for the pain. He stated that he suffers from abdominal pain and that he takes pain medication for the pain. He stated that it is very difficult for him to concentrate when he takes pain medications. The record fails to substantiate more than moderate difficulties in this domain.

(AR 18). While the ALJ considered Woods's complaints about his abdominal pain and medication side effects of fatigue and dizziness, the ALJ observed that despite his complaints, Woods in the past was able to work after his cancer treatments while on high doses of pain medications. (AR 19-20). In fact, Woods worked full time for *10 years* after undergoing cancer treatments. (AR 21 (noting Woods's "strong work history"), 43, 181, 271). The ALJ pointed out that Woods stopped working because the plant closed, not because of any disabling impairments. (AR 21, 35-36). And as explained *infra*, although Woods testified that he took extra breaks at work and missed one to two days of work a week (AR 46-49), he failed to substantiate this testimony after the hearing when given an opportunity to do so (AR 21). *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("[An ALJ is] required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." (citation omitted)).

Moreover, the record is devoid of any medical source opinion indicating that Woods has deficits in concentration, persistence, or pace that would impact his ability to perform unskilled work. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

Therefore, on this record, the Court concludes that the ALJ adequately accounted for Woods's mental limitations in the RFC and in the hypotheticals posed to the VE at step five.

"No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (citations omitted).

### D. The ALJ's Consideration of Woods's Symptom Testimony Will Not Be Disturbed

Woods also argues that the ALJ improperly discounted the credibility of his symptom testimony. Woods cites to his testimony that his pain and other symptoms cause him to take one to two naps a day, each lasting one to two hours, and caused him to miss one to two days of work when he was last working. (AR 48-49). Woods emphasizes that the VE testified that an individual who misses even one day in the 90-day probationary period would not be able to sustain competitive work. (AR 58). For the following reasons, the ALJ's credibility determination will not be disturbed.

An ALJ's credibility determination concerning a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness" (citation omitted)). "[Because] the ALJ is in the best position to observe witnesses, [the Seventh Circuit] usually

do[es] not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) (citations omitted).

Here, the ALJ found Woods's symptom testimony "not entirely credible" for several reasons. (AR 20). These include that: (1) the medical evidence of record does not establish the cause of Woods's allegations of abdominal pain; (2) the medical evidence does not support a severe mental impairment; (3) no medical source opinions of record opined that Woods is unable to work; (4) Woods worked for 10 years after his bout with cancer and stopped working due to the plant closing, not because of disabling symptoms; (5) Woods failed to submit evidence after the hearing to substantiate his assertion that he missed one to two days of work when he last worked due to his pain and other symptoms; and (6) Woods did not appear to be in disabling pain at the hearing. (AR 20-21). Woods challenges just two of these six reasons provided by the ALJ.

### 1. Dr. Wallisa's Report

First, Woods contends that the ALJ did not review material medical evidence of record concerning the cause of his abdominal pain—Dr. Wallisa's report of September 8, 2014, at MedExpress Marion. To review, Dr. Wallisa observed that Woods had tenderness and guarding "noted diffusely on abdominal exam," but no other clinical signs; Dr. Wallisa assessed generalized abdominal pain, indicating that Woods's symptoms appeared to be neuropathic pain related to his past chemotherapy and radiation treatments. (AR 319). Woods states that he submitted Dr. Wallisa's report to the Appeals Council, but the Appeals Council found that it was not new evidence because a copy of the report was purportedly already in the record. (DE 20).

In its Notice of Appeals Council Action, the Appeals Council stated that it considered the additional evidence submitted by Woods—that is, it "considered Medical Records from MedExpress Marion dated September 8, 2014 (7 pages)." (AR 2). The Appeals Council stated, however, that the evidence was "not new because it is an exact copy of a document found in the record at Exhibit 15F." (AR 2). The Appeals Council further explained that it "considered whether the [ALJ's] actions, conclusion, or findings are contrary to the weight of the evidence currently of record," and it "found that this information does not provide a basis for changing the [ALJ's] decision." (AR 2).

When a claimant provides additional evidence to the Appeals Council, the Council "must determine (i) whether the proffered new evidence relates to the proper time period and (ii) whether the evidence is 'new' and 'material.'" *Binzen v. Barnhart*, No. 01 C 2716, 2002 WL 31324061, at *1 (N.D. Ill. Oct. 16, 2002) (quoting *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997)); *see Getch v. Astrue*, 539 F.3d 473, 483-84 (7th Cir. 2008); *see* 20 C.F.R. § 404.970(b). "If the Appeals Council answers both of these questions in the affirmative it must then determine whether the ALJ's decision is contrary to all of the evidence, i.e., the evidence before the ALJ and the new and material evidence submitted to the Appeals Council." *Binzen*, 2002 WL 31324061, at *1. "If the Appeals Council denies review at this stage—essentially reasoning that all of the evidence does not undermine the ALJ's decision—then the Council's decision is unreviewable[,]" *id*. (citing *Perkins*, 107 F.3d at 1294), provided, however, that the refusal does not rest on a mistake of law, such as a determination that the evidence newly submitted to the Appeals Council was not material to the disability determination. *See Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

Here, regardless of the Appeals Council's assertion that Dr. Wallisa's report was already of record, it appears that the Appeals Council reviewed Dr. Wallisa's report. (AR 2). As explained above, in its Notice of Appeals Council Action sent to Woods, the Appeals Council expressly acknowledged its review of the records from MedExpress Marion, which consisted of Dr. Wallisa's report, and the Appeals Council further explained that the evidence does not provide a basis for changing the ALJ's decision. (AR 2).

"Implicit in the Appeals Council's decision to review the additional evidence is the [C]ouncil's determination that [Woods's] proffered evidence was both 'new' and 'material.'" *Binzen*, 2002 WL 31324061, at *6; *see also Alexander v. Barnhart*, No. 01 C 0168, 2003 WL 21418244, at *8 (N.D. Ill. June 18, 2003); *Burling v. Barnhart*, No. 01 C 3189, 2002 WL 731129, at *9 (N.D. Ill. Apr. 24, 2002). Thus, the Appeals Council's refusal to review the case does not rest on a mistake of law that the additional evidence was not "new" or "material." *See, e.g., Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988) (articulating that the Appeals Council's determination that additional evidence is not material is a legal determination and therefore is subject to *de novo* review (citation omitted)); *Maxwell v. Sullivan*, 792 F. Supp. 582, 592 (N.D. Ill. 1992) (stating that a district court is entitled to review an Appeals Council's decision whether additional evidence is "new and material").

To the contrary, the Appeals Council refused to review the case because it concluded that after considering the additional evidence, the new evidence was not contrary to the weight of the evidence currently of record. (AR 2); *see, e.g.*, *Perkins*, 107 F.3d at 1294. As explained *supra*, "[t]he [C]ouncil's subsequent determination that the additional evidence did not provide a basis to disturb the ALJ's decision is unreviewable." *Binzen*, 2002 WL 31324061, at *6 (citing *Perkins*, 107 F.3d at 1294). That is, the Appeals Council's conclusion that the new evidence

19

"did not tip the scales in favor of the [p]laintiff's claim for benefits" is a "factual determination which may not be disturbed on review." *Asberry-Whitt v. Barnhart,* No. IP 02-0377-C-T/L, 2003 WL 21696543, at *5 (S.D. Ind. July 5, 2003) (citing *Perkins*, 107 F.3d at 1294); *see also Lopez v. Massanari*, No. 01 C 1426, 2002 WL 531404, at *7-8 (N.D. Ill. Apr. 9, 2002); *Nitz v. Massanari*, No. 00 C 3850, 2001 WL 929759, at *10 (N.D. Ill. Aug. 15, 2001) (explaining that where "the Appeals Council considered this new evidence, its discretionary decision that the evidence did not warrant further action is not reviewable"); *Lee v. Chater*, No. 95 C 3326, 1996 WL 478913, at *2 (N.D. Ill. Aug. 20, 1996) (rejecting plaintiff's characterization of the Appeals Council's decision as a "mistake of law" where the Appeals Council considered the new evidence but simply found that it did not provide a basis for changing the ALJ's decision).

And even if the Appeals Council had not reviewed Dr. Wallisa's report, necessitating a *de novo* review of such evidence by this Court, Dr. Wallisa's report does not create a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins*, 107 F.3d at 1296 (citation and internal quotation marks omitted); *cf. Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015) (finding that the new evidence contradicted the ALJ's conclusion that the claimant's condition was on an upward trajectory at the end of the adjudicative period); *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (finding that the new evidence filled an evidentiary gap identified in the ALJ's decision). In assessing the severity of Woods's abdominal pain complaints, the ALJ cited numerous pieces of evidence to support her conclusion that "[t]he medical evidence does not establish the cause of the claimant's allegations of abdominal pain." (AR 20). The ALJ referred to the results of Woods's colonoscopy on January 24, 2012; the results of a flexible sigmoidoscopy on July 15, 2012; the consultative

examination by Dr. Chan on January 5, 2013; and a CT scan of Woods's abdomen on February 24, 2014—none of which identified "a clear explanation" for Woods's complaints of abdominal pain. (AR 20).

Dr. Wallisa's examination, too, was unremarkable in clinical findings, aside from abdominal tenderness and guarding "noted diffusely." (AR 319); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work."). Dr. Wallisa diagnosed Woods with "[a]bdominal pain, generalized," stating that his pain appeared to be neuropathic pain relating to his past cancer treatments. (AR 320). But this is far from "a clear explanation" for Woods's abdominal pain complaints (AR 20), as Dr. Chan, too, generally attributed Woods's abdominal pain to his past cancer treatments (AR 274). Significantly, Dr. Wallisa did not impose any physical restrictions, opine about any limitations, or assert that Woods is unable to work. As the ALJ correctly observed, "neither the medical evidence of record, nor the medical opinions, support the claimant's allegations of a complete inability to work" (AR 21), and the addition of Dr. Wallisa's report would not change that conclusion.

Consequently, Woods's arguments concerning Dr. Wallisa's report do not necessitate a remand of the ALJ's credibility determination regarding Woods's symptom testimony. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (affirming the ALJ's credibility determination because it was not "patently wrong" or "divorced from the facts contained in the record").

### 2. Woods's Work History

Woods also challenges, at least in part, the ALJ's consideration of his work history in

connection with the ALJ's credibility determination. While Woods admits that the ALJ was correct in considering that he stopped working because the plant closed, he contends that his earnings report is not inconsistent with his assertion that he missed one to two days a week when he last worked.

With respect to Woods's work history, the ALJ reasoned:

> The claimant has a strong work history. At age 51, he stopped working when the plant closed, not due to any disabling impairments. The undersigned gave the claimant an opportunity after the hearing to substantiate testimony regarding days off work and need for breaks. Unfortunately, the efforts were unsuccessful. The evidence submitted post hearing showed consistent earnings.

(AR 21). Woods argues that the ALJ's conclusion "is not entirely true," at least with respect to 2011, as in March 2011 he earned just $620.35, he earned nothing in May 2011, and the months of February, April, and July were also far below normal. (DE 20 at 9 (citing AR 169)). Woods also suggests that his more consistent earnings in 2012 could include vacation pay or severance pay, which would not reflect his days off. (DE 20 at 9).

In asserting this argument, Woods seems to ignore a basic premise of Social Security law—that it is his burden, not the Commissioner's, to produce "adequate records and evidence to prove [his] claim of disability." *Scheck*, 357 F.3d at 702; *see Clifford*, 227 F.3d at 868 (explaining that the burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner). As the ALJ explained, after the hearing she gave Woods an opportunity to substantiate his testimony about his alleged days off work and need for breaks by submitting additional information from his past employer. (AR 21). Woods concedes, however, that his "employer did not answer the specific questions about absences, but instead only provided wage information." (DE 20 at 8). That the wage information did not substantiate

Woods's claim of excessive absences and need for breaks results in Woods's failure to bear his burden to substantiate his testimony. As such, the ALJ's credibility determination is supported by her consideration of Woods's work history. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (considering the claimant's work history when discounting his credibility); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) (directing the ALJ to consider a claimant's prior work record and efforts to work as part of the credibility determination).

In sum, the ALJ provided at least six reasons for discounting the severity of Woods's symptom testimony. Woods challenges just two of these reasons, and neither of his challenges provide a basis upon which to upset the ALJ's credibility determination, which is entitled to special deference. *Powers*, 207 F.3d at 435. As such, the Court has no difficulty upholding the ALJ's credibility determination in this instance because when assessing Woods's symptom testimony, the ALJ built an adequate and logical bridge between the evidence and her conclusion, *see Ribaudo*, 458 F.3d at 584, and her conclusion is not "patently wrong," *Powers*, 207 F.3d at 435. Consequently, the ALJ's credibility determination will stand, and the final decision of the Commissioner will be affirmed.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Woods.

SO ORDERED.

Entered this 29th day of September 2017.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge